UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES WILFONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-2747-SNLJ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff James Wilfong's applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. Wilfong now seeks judicial review. (#1, #14). The Commissioner opposes Wilfong's complaint and supporting brief (#19). The issues are ripe for determination. For the reasons set forth, the Commissioner's decision is **AFFIRMED**.

**I.     Procedural History**

Wilfong's application was denied at the initial determination level. He then appeared before an Administrative Law Judge ("ALJ"). The ALJ found Wilfong is not disabled because he can perform work that exists in substantial numbers in the national economy. Wilfong then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration. The Appeals Council denied review. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20

1

C.F.R. §§ 404.981, 416.1481. Wilfong now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II. Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant

3

is responsible for *providing* evidence relating to his or her RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. The ALJ's Decision

At Step One, the ALJ found Wilfong met the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since August 31, 2013, the alleged onset date. (Tr. 12). At Step Two, the ALJ found Wilfong suffers from

4

six severe physical impairments: (1) diabetes mellitus; (2) obesity; (3) atrioventricular (AV) block; (4) bradycardia status post pacemaker; (5) obstructive sleep apnea; and (6) asthma. (Tr. 12). At Step Three, the ALJ concluded Wilfong does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 13).

Next, in beginning the analysis of Step Four, the ALJ determined Wilfong's RFC.[1] The ALJ found that Wilfong

> has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant (1) can occasionally climb stairs and ramps; (2) can never climb ladders, ropes, and scaffolds; (3) can frequently balance, stoop, kneel, crouch and crawl; (4) can tolerate no exposure to hazards such as unprotected heights and moving mechanical parts; and (5) can tolerate occasional exposure to dust, gases, fumes, odors and poor ventilation.

(Tr. 13-14). As part of this determination, the ALJ found Wilfong's allegations about his symptoms' intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 15). The ALJ noted Wilfong's daily activities—such as walking around downtown St. Louis, using a computer for hours at the library, and performing light chores—and also the "generally conservative treatment and monitoring" of Wilfong's various symptoms by medical providers. (Tr. 14-15, 19). The ALJ further noted Wilfong's positive response to medication and treatment procedures, as well as his largely normal test results regarding

---

[1] In the past, there has been some confusion as to when the RFC is determined, which affects who holds the burden of proof in establishing an appropriate RFC. In this Circuit, it has been held that "the RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (*quoting Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000)).

5

his gait, muscle strength, cardiovascular health, and pulmonary health. (Tr. 19). The ALJ specifically took Wilfong's obesity into account, stating "[SSR] 02-1p requires that the undersigned considers obesity … in determining the residual functional capacity." (Tr. 18). The ALJ acknowledged "obesity may affect the cardiovascular and respiratory systems … [and] may limit an individual's ability to sustain activity." (Tr. 18). Finally, the ALJ emphasized "the record does not contain any opinions from treating or examining physicians indicating that [Wilfong] is unable to perform work activity or has limitations greater than those determined in this decision." (Tr. 19).

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Wilfong can perform his past relevant work given his designated RFC. The ALJ determined that Wilfong cannot perform any past relevant work. (Tr. 19). This determination is consistent with testimony given by the vocational expert ("VE"). (Tr. 135).

At Step Five, the ALJ analyzed whether Wilfong can successfully adjust to other work. The ALJ noted that if Wilfong had the RFC to perform the full range of light work—in other words, if Wilfong's RFC matched perfectly with the light work Medical-Vocational Guidelines (the "Grids")—then the Grids would direct a finding of not disabled; but, additional limitations impede Wilfong's ability to perform all or substantially all of the light work requirements. (Tr. 20). Thus, the ALJ relied on VE testimony to determine the extent to which these limitations erode Wilfong's occupational base to perform light work. The VE testified Wilfong is able to perform work as a collator, marker, and routing clerk, even after considering all of the limitations

6

in Wilfong's RFC. (Tr. 135). The ALJ then found these jobs exist in significant numbers in the national economy and concluded Wilfong is not disabled. (Tr. 20).

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. Discussion

Wilfong makes three arguments in his brief.

7

First, he argues Social Security Ruling 96-8p requires that an RFC assessment include a "narrative discussion" describing how the evidence supports each conclusion, citing specific medical evidence (e.g. laboratory findings) and non-medical evidence (e.g. daily activities, observations, etc.). *See* SSR 96-8p, 1996 WL 374184 at *7 (S.S.A., July 2, 1996). Wilfong argues "the decision fails to include a narrative discussion of the RFC findings, but rather just summarizes the evidence then concludes the RFC is supported by the objective evidence without explaining how the evidence supports the limitations within the RFC." (Doc. #14, p. 3-4).

Second, he argues the "ALJ did not attempt to [] develop the record by getting an RFC assessment from a treating source or a CE." (*Id*. at 4). Wilfong criticizes the ALJ, explaining "the ALJ [] formed her own opinion based on the objective medical evidence only[,] instead of relying on the opinions of medical providers." (*Id*.) In essence, Wilfong argues the ALJ is unqualified to make an RFC assessment "as a layperson" and that, instead, the RFC assessment should be "entrusted to an expert or experts." (*Id*. at 5).

Third, he argues Social Security Ruling 96-7p requires an ALJ's decision to contain "specific reasons" for credibility findings, such as when rejecting a claimant's subjective complaints of pain or disability. *See* SSR 16-3p, 2017 WL 5180304 (S.S.A., Oct. 25, 2017).[2] Wilfong is critical of the ALJ for having allegedly summarily concluded that "the medical evidence of record indicates [Wilfong] is not as limited as alleged."

---

[2] SSR 96-7p was superseded by SSR 16-3p on March 16, 2016. *See* SSR 96-7p, 1996 WL 374186 at *2 (S.S.A., Jul. 2, 1996). The ALJ's decision came after this change on October 28, 2016. (Tr. 21). However, the Court notes that both Rulings require an ALJ to include "specific reasons" for the weight given to a claimant's subjective complaints. Id. at *4; *see also* SSR 16-3p, 2017 WL 5180304 at *10.

8

(Doc #14, p. 7). Wilfong states the ALJ based her finding "solely" upon the objective evidence and gave no credit to his subjective complaints. (*Id*.).

Each argument is addressed in turn.

**A. The ALJ Provided a Sufficient Narrative Discussion in Her Decision**

Wilfong argues the ALJ summarized the relevant medical and non-medical evidence and then drew a conclusion as to his RFC without explaining how said evidence supports the ALJ's conclusion, thus violating the "narrative discussion" mandate of SSR 96-8p.

Based upon the record before this Court, Wilfong's argument elevates form over substance. There is no requirement that an ALJ follow each RFC limitation with a list of specific, supporting evidence. *Zorsch v. Berryhill*, 2018 WL 3493087 at *3 (W.D. Mo. Jul. 20, 2018); *Kimmel v. Berryhill*, 2017 WL 1105122 at *5 (E.D. Mo. Mar. 24, 2017); *Jennings v. Colvin*, 2014 WL 2968796 at *14 (E.D. Mo. Jul. 1, 2014). Whether or not Wilfong desires the ALJ to format her opinion to explicitly match each RFC limitation to the supporting evidence, there is nothing contained within SSR 96-8p to require such an undertaking—SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported. *See* SSR 96-8p, 1996 WL 374184 at *7; *see Garrison v. Astrue*, 2012 WL 4336202 at *15 (E.D. Mo. Sept. 21, 2012) (noting that neither the Eighth Circuit nor SSR 96-8p requires the RFC to be presented in "rigid" or "bullet-point format with each limitation immediately followed by a discussion of the supporting evidence").

When considering the record as a whole, this Court is satisfied with the thoroughness of the ALJ's decision, which takes into consideration Wilfong's subjective complaints, his daily activities, the unique limiting aspects of his obesity, his positive response to treatment and medications, and the credible objective medical evidence (that points to a consistently conservative approach to Wilfong's ailments and repeatedly normal or near-normal lab results). (Tr. 13-19). Contrary to Wilfong's assertion, these areas of consideration align with the type of evidence an ALJ must consider under SSR 96-8p. *See* 1996 WL 374184 at *5. The ALJ's RFC findings are further buttressed by the fact that no treating or examining physician has ever found Wilfong is unable to engage in work activities and, further, none have suggested Wilfong is limited to a greater degree than the RFC he was given by the ALJ. This fact alone is of considerable weight. *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) ("we find it significant that no physician who examined [claimant] submitted a medical conclusion that she is disabled and unable to perform any type of work"). Simply put, the ALJ may not have linked her analysis to each particular RFC limitation, but the totality of her analysis makes clear she followed the evidentiary pathway set forth in SSR 96-8p. *See* 1996 WL 374184 at *5, 7 (requiring an ALJ to provide a "narrative discussion" describing how the "evidence"—to include, among other things, medical history, laboratory findings, effects of treatment, daily activities, observations, and effects of symptoms—supports each conclusion, citing to "specific medical facts" and "non-medical evidence"); *see also Pejmanovic v. Berryhill*, 2017 WL 1508602 at *6 (E.D. Mo. Apr. 27, 2017) (rejecting claimant's argument that the ALJ "simply summarized" the medical evidence and determined an RFC "without setting

forth any rationale" based on the court's view that the ALJ's analysis and cited-to sources, as a whole, supported the designated RFC).

This Court rejects Wilfong's first point of argument.

**B. The ALJ Was Not Required to Defer to Treating or Examining Physicians in Determining Wilfong's RFC**

In his second point, Wilfong argues the ALJ erroneously drew her own conclusions when deciding Wilfong's RFC rather than relying on experts, such as a treating source or consultative exam.

This line of argument—to the extent it suggests an ALJ may not draw inferences from the record but must, instead, limit an RFC determination to the express findings of a particular medical provider—has been repeatedly rejected in this Court over the past seven years. *See, e.g., Castro v. Berryhill*, 2018 WL 3020207 at *8-9 (E.D. Mo. June 18, 2018) (concluding an ALJ's determination of claimant's RFC must be based upon "some medical evidence" and, thus, there is no requirement that an ALJ rely upon a specific medical opinion in the determination process); *Swain v. Berryhill*, 2017 WL 2132479 at *5 (E.D. Mo. May 17, 2017) (accord); *Pejmanovic v. Berryhill*, 2017 WL 1508602 at *6 (E.D. Mo. Apr. 27, 2017) (accord); *Trucks v. Colvin*, 2016 WL 7405842 at *7 (E.D. Mo. Dec. 22, 2016); *Edwards v. Colvin*, 2016 WL 4561942 at *6 (E.D. Mo. Sept. 1, 2016) (accord); *Wheeler v. Colvin*, 2014 WL 1212700 at *13 (E.D. Mo. Mar. 21, 2014) (accord); *Heavin v. Astrue*, 2011 WL 4600691 at *7 (E.D. Mo. Sept. 30, 2011) (accord). Indeed, the Eighth Circuit has expressly instructed "there is no requirement that an RFC finding be supported by a specific medical opinion," rather an ALJ's assessment need

only be supported by "some medical evidence." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). And, contrary to Wilfong's claim that an ALJ—as a layperson—cannot independently decide a claimant's RFC, the Eighth Circuit has explained an "RFC is an administrative assessment" and, therefore, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Wilfong appears to take issue, ultimately, with the fact that the ALJ's decision did not specifically limit Wilfong's ability to walk, arguing "despite cardiac problems and breathing problems, the decision finds claimant can perform unlimited walking." (Doc #14, p. 5). But, even a brief review of the records reveals the ALJ was within her discretion not to provide a walking limitation. Wilfong admitted a typical day included walks around downtown St. Louis. (Tr. 14, 111-112). And his cardiology and pulmonary lab results were consistently at or near normal. (Tr. 16-17, 420, 474, 486, 513, 592, 644, 651, 702) Further, medical records indicate Wilfong was responding well to treatment and medications for his foot pain, denied shortness of breath, and exhibited normal muscle strength, tone, coordination, and gait. (Tr. 17-18, 557, 569, 652, 682, 701). It was Wilfong's burden to demonstrate his RFC. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011). And it appears clear to this Court that the reason a walking limitation was not provided was not because the ALJ failed to consider it, but because the record did not support it. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (despite the lack of any specific findings regarding the ability to walk in ALJ's RFC determination, the court was satisfied that the ALJ's omission was based on the fact that the ALJ did not believe

the record warranted such a limitation). Based on the record, the Court does not find the ALJ's decision not to provide a walking limitation was unsupported by the evidence.

This Court rejects Wilfong's second point of argument.

### C. The ALJ Provided Specific Reasons for Discrediting Wilfong's Subjective Complaints

In his third point, Wilfong argues the ALJ did not provide specific reasons for discrediting his subjective complaints, as is mandated by SSR 16-3p.

Wilfong is correct to suggest subjective complaints cannot be dismissed *solely* because of contrary objective medical evidence. *See, e.g., Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009) ("an ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them"). Rather, in testing Wilfong's credibility, this Court is instructed to consider the so-called *Polaski* factors, which includes, among other things, a consideration of his daily activities, the effectiveness of medication, any functional restrictions, and the absence of objective medical evidence supporting Wilfong's claims. *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (*citing Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The *Polaski* factors align with the factors set forth in SSR 16-3p. *See* 2017 WL 5180304, at *7-8.

Here, the Court finds the ALJ appropriately considered the factors set forth in *Polaski* and SSR 16-3p when discrediting Wilfong's subjective complaints. For example, Wilfong repeatedly points out that he continues to experience "numbness" and "tingling pain" in his feet that makes it feel like he is "walking on rocks," yet during the hearing

before the ALJ, Wilfong freely admitted he takes walks as part of his daily activities—making no mention of the pain he purportedly experiences. (*compare* Doc. #14, p. 7; *with* Tr. 111-112). As another example, medical records from September of 2015 indicate Wilfong would take "long walks" and, though this apparently aggravated his right heel, the records further indicate medication was effective in controlling his symptoms. (Tr. 569). Isolated examples aside, when considering the record as a whole, it is likewise clear that Wilfong's subjective complaints do not match to the objective evidence; indeed, on balance the record reveals mostly conservative treatment for Wilfong's ailments and, as already highlighted, no physician was willing to impose any type of functional restriction more restrictive than those provided for in the ALJ's chosen RFC. The ALJ was permitted to rely on these cumulative factors (and others noted in the ALJ's decision) when rejecting Wilfong's subjective complaints. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("if an impairment can be controlled by treatment or medication, it cannot be considered disabling"); *Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015) (finding the ALJ's determination of plaintiff's RFC was supported by substantial evidence where there were no medically determinable impairments to support the level of pain alleged by plaintiff, treating physicians consistently noted normal strength, MRI tests showed only mild osteoarthritis, and medication controlled the plaintiff's pain); *see also Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) ("we defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence").

       This Court rejects Wilfong's third point of argument.

## VI. Conclusion

Having found no basis in the three arguments raised by Wilfong, and finding the ALJ's decision was supported by substantial evidence, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 19th day of September 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE